IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHANIE SHIPP, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 1:18-cv-00760-LY |
| | § | |
| | § | |
| CHARTER COMMUNICATIONS, INC. | § | |
| | § | |
| *Defendant.* | | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

For its Motion for Summary Judgment, Defendant Charter Communications, Inc. respectfully shows the following:

### I.  INTRODUCTION

Plaintiff Stephanie Shipp asserts state and federal statutory claims against her former employer, Charter, for gender and age discrimination and FMLA retaliation.[1] Shipp, a former Major Account Executive assigned to hospitality sales, was employed by Time Warner Cable before its merger with Charter in May 2016 and worked for Charter only briefly thereafter. Shipp contends that, during a five-month period in 2016 in which she reported to Manager Chris Matthews, he treated her in an alleged negative and disparate manner, which ultimately led her to resign her employment during the early morning hours of June 7, 2016. Prior to her resignation, however, Shipp never suffered any pay cut, demotion, discipline, or other conduct that would

---

[1] Although it remains unclear as to whether Shipp alleges a hostile work environment claim, Charter moves for summary judgment on this claim (and any other purported claim) as well. *See* Dkt. 1, Pl.'s Compl. at 7-9 (Causes of Action),

satisfy her heavy burden of demonstrating a constructive discharge, a required element for each of her three legal claims. As the undisputed facts reveal, the circumstances Shipp faced in 2016 were not such that a reasonable person would have been forced to resign. Thus, for this reason, as well as Shipp's failure to file her FMLA and Texas state law claims timely, this Court should grant Charter's Motion, dismiss Shipp's lawsuit with prejudice, and award Charter the taxable costs it has incurred in the defense of this lawsuit.

## II.   FACTUAL BACKGROUND

Pursuant to Western District of Texas Local Rule CV-7(d)(1), Charter attaches its full Factual Background as Appendix A to this Motion.

## III.   ARGUMENT & AUTHORITIES

### A.   *Applicable Summary Judgment Standard.*

Summary judgment is appropriate where no genuine issue as to any material fact exists. FED. R. CIV. P. 56(c). Rule 56(c) in fact "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the moving party, Charter bears the burden only of "informing the district court of the basis for its motion, and identifying those portions of … [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. It need not "negat[e] the opponent's claim." *Id.* To defeat summary judgment, however, the nonmovant must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 324. "A fact is material only if its resolution would affect the outcome of the action, and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009).

Although the court must resolve all factual controversies in favor of the plaintiff, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Ikekwere v. Mnuchin*, No. 1:15-CV-418-DAE, 2017 WL 4479614, at *4 (W.D. Tex. May 15, 2017) *aff'd,* 722 F. App'x 388, 388 (5th Cir. 2018) (quoting *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003)); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (The nonmovant's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.'").

**B.      Shipp's FMLA Retaliation Claim is Barred by Limitations.**

Shipp filed the instant lawsuit on September 5, 2018, which is more than two years after her June 7, 2016 resignation from employment. *See* Dkt. 1, Pl.'s Compl. However, FMLA retaliation lawsuits, unless based on willful conducted, must be filed within two years of any alleged adverse employment action. 29 U.S.C. § 2615(a); *see Mozingo v. Oil States Energy, Inc.*, 661 F. App'x 828, 830 (5th Cir. 2016) (applying FMLA's two-year statute of limitations to affirm summary judgment in favor of employer). Because Shipp did not file her instant lawsuit against Charter within the two-year statute of limitations, she bears the burden of showing that any alleged violation of the FMLA was willful. *See Mozingo*, 661 F. App'x at 830 (citing U.S. Supreme Court and 5th Circuit cases in support). Stated differently, Shipp's claims against Charter are time-barred, as a matter of law, absent proof that Defendant "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Id.*

In this instance, Shipp cannot possibly demonstrate willfulness. Although she alleges in her Complaint that Charter's alleged FMLA "violations" were willful, she can present no evidence in support of such allegation. When asked in her deposition what evidence she had that indicated Manager Matthews treated her differently because she took two weeks of FMLA leave several

months before she resigned, Shipp could not cite anything credible beyond her mere subjective belief. Ex. 1, Pl. Dep. at 161:13-164:21. She also admitted that Matthews, who took FMLA leave himself,[2] never said anything negative about her taking two weeks of FMLA leave in January 2016. *Id.* at 109:25-110:5 & 141:2-17.[3]

Shipp likewise admitted that she never complained **at all** to Charter's Employee Relations Department, which is the department responsible for investigating concerns involving legally protected conduct or characteristics. *Id.* at 101:13-17; *see also* Ex. 11, EEO Policy (providing various contact methods for raising complaints to the Employee Relations Department); Ex. 4, Zimmerman Decl. at 10 ¶ 10(c) (explaining how employees can view and access the EEO Policy). Additionally, Shipp admitted she did not alert Senior Human Resources Director Tamara Zimmerman, with whom she dealt, to any comments by Matthews regarding FMLA leave, nor did she contact anyone in the Human Resources Department after a mediation session was held on April 5, 2016 to resolve any conflicts between Matthews and Shipp. Ex. 1, Pl. Dep. at 253:2-23 & 255:1-14. Shipp similarly did not follow the conflict resolution process contained in the applicable Rules of Engagement. *See* Ex. 9, Mar.15-16, 2016 Emails; Ex. 11, Rules of Engagement at § 9.0; Ex. 4, Zimmerman Decl. at 10 ¶ 10(c).

By failing to exercise these multiple complaint avenues available, Shipp in effect deprived Charter of a reasonable opportunity to address any claimed FMLA retaliation by Matthews. As a

---

[2] Matthews took FMLA leave from July 31 to September 7, 2010, and November 27, 2010 to January 5, 2011. Ex.2, Def.'s Answer to Interrog No. 5.

[3] A few hours later during her deposition, Shipp suddenly recalled that, in March or April 2016, Matthews made a one-time "joking" comment that, "all my women" are out on FMLA; "[t]hat's why we should have all-male teams." Ex.1, Pl. Dep. at 243:16-245:3 & 249:22-25. Shipp, however, admits she never reported this alleged comment to anyone in Human Resources. *Id.* at 248:8-16. However, that aside, nothing in this alleged comment evidences any retaliatory animus against Shipp for taking two weeks of FMLA leave, as it is neither derogatory with regard to the use of FMLA leave nor did it reference Shipp at all.

result, she cannot possibly claim that Charter recklessly disregarded her FMLA rights. And, without any competent evidence demonstrating willfulness, Shipp remains bound by the FMLA's applicable two-year statute of limitations. All in all, Shipp's FMLA retaliation claim is untimely and must be dismissed with prejudice on that basis alone.[4]

## C.    *Shipp's Chapter 21 Claims are Barred by Limitations.*

An employee claiming a violation of Chapter 21 of the Texas Labor Code must exhaust her administrative remedies before bringing a civil action against her employer. *See* TEX. LAB. CODE § 21.201. This mandatory requirement specifically obliges an employee to file a charge of discrimination within 180 days of any alleged discriminatory act. *Id.* at § 21.202(a); *Prairie View A&M v. Chatha,* 381 S.W.3d 500, 509 (Tex. 2012); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996). Section 21.202 of the Texas Labor Code also mandates that any charge of discrimination filed outside the 180 day-limitations period should be "dismissed." TEX. LAB. CODE § 21.202(b); *see Alamo City Coll. Dist. v. Ryan*, No. 04–17–00196–CV, 2017 WL 4942858, at *2 (Tex. App.—San Antonio Nov. 1, 2017, no pet.).

In this case, Shipp filed her underlying charge of discrimination on November 16, 2016. *See* Dkt. 1, Pl.'s Compl. at Ex. A. Accordingly, any claims she has based on actions allegedly occurring prior to May 20, 2016—180 days prior to her charge filing—are time-barred as a matter of law. Because Shipp has not (and cannot) allege that any specific discriminatory adverse act occurred between May 20, 2016 and her June 7, 2016 resignation from her employment, this also

---

[4] Shipp's admissions and absence of disparate treatment evidence also undermines her ability to survive summary judgment on the merits. She simply lacks sufficient evidence to demonstrate that a causal connection exists between her taking of FMLA leave in January 2016 and her alleged constructive discharge some five months later in June 2016. *See Lorentz v. Alcon Labs., Inc.*, 535 F. App'x 319, 326 (5th Cir. 2013) (affirming summary judgment on FMLA claim where alleged comparators had different supervisors or did not engage in "nearly identical" misconduct). Thus, even if the Court were to turn to the merits of Shipp's FMLA retaliation claim, several other grounds exist upon which it could be dismissed on summary judgment.

means that her Chapter 21 claims must be dismissed in their entirety.[5]

### D.    *Shipp Cannot Demonstrate She was Constructively Discharged.*

Turning to the merits of her legal claims, Shipp is unable to meet her *prima facie* burden. Whether under Title VII, the ADEA, the FMLA, or Chapter 21, Shipp must prove that she suffered an adverse employment action. *See, e.g., Brown v. Liberty Mut. Group, Inc.*, 616 F. App'x 654, 657 (5th Cir. 2015) (Title VII) (referred to hereafter as *Brown (2015)*); *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006) (FMLA retaliation)*; Gill v. DIRTT Envt'l Solutions, Inc.*, No. 5:17-CV-3-DAE, 2018 WL 9439764, * 3 (W.D. Tex. Sept. 28, 2018) (ADEA and Chapter 21). However, because she resigned her employment, Shipp must demonstrate that her resignation amounted to a constructive discharge. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (referred to hereafter as *Brown (2001)* and applying constructive discharge standard to Title VII claims); *Haley v. Alliance Compressor, LLC*, 391 F.3d 644, 652 (5th Cir. 2004) (FMLA); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) (ADEA); *Parra v. Fedex Freight Servs., Inc.*, A-15-CA-030-SS, 2016 WL 2595114, at *5 (W.D. Tex. May 4, 2016) (Chapter 21). As explained below, however, Shipp cannot present sufficient evidence to satisfy the high burden imposed for a constructive discharge.

### 1.    High Constructive Discharge Standard Applies in the 5th Circuit.

To demonstrate a constructive discharge, a plaintiff must offer evidence that the employer intentionally made her working conditions "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Jett v. Dallas Ind. Sch. Dist.*, 798 F.2d 748, 755 (5th Cir. 1986), *modified on other grounds*, 491 U.S. 701 (1989); *accord Odeh v. City of*

---

[5] Even if Shipp's Chapter 21 claims could be saved under the continuing violation doctrine, which they cannot without a specific discriminatory adverse act occurring within the 180-day limitations period, Shipp's Chapter 21 claims still should be dismissed on the merits for the same reasons as her Title VII gender discrimination claim and her ADEA age discrimination claim.

*Baton Rouge/Parish of East Baton Rouge*, 731 F. App'x 288, 292 (5th Cir. 2018). Satisfying this high burden is a difficult one, as courts examine "the working environment as a whole" and "must conclude the resignation was reasonable under all circumstances." *Madathil v. Accenture LLP*, Civil Action No. 4:18-CV-511-ALM-CAN, 2019 WL 2913308, at *11 (E.D. Tex. May 29, 2019) (citing *Barrow*, 10 F.3d at 297). Moreover, in the constructive discharge context, "the subjective state of mind of the employee is irrelevant." *Id.* (quoting *Robinson v. Waste Mgmt. of Tex.*, 122 F. App'x 756, 758 (5th Cir. 2004) and citing *Epps v. NCNB Tex.*, 7 F.3d 44, 45 (5th Cir. 1993)).

Courts generally consider seven factors in determining whether a claimant has carried her heavy burden to prove constructive discharge: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation, or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not." *Barrow*, 10 F.3d at 297. With regard to the sixth factor, courts have routinely required a greater degree of harassment than that required to establish a hostile work environment claim. *See, e.g., Brown (2001)*, 237 F.3d at 566; *Robinson*, 122 F. App'x at 759; *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). Courts likewise have found unlawful discrimination, without any aggravating factors, insufficient to establish a constructive discharge. *See, e.g., Brown (2001)*, 237 F.3d at 566 (citing *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990) and *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429-30 (5th Cir. 1992), *aff'd* 511 U.S. 244 (1994)). Additionally, courts oblige employees to be reasonable and "not to assume the worst, and not to jump to conclusions too fast." *Webb v. Cardiothoracic Surgery Assocs. of N. Tex. P.A.*, 139 F.3d 532, 539 (5th Cir. 1998). To this end, courts have long expected employees to exhaust other options for resolving their concerns before

turning to resignation. *Haley*, 391 F.3d at 652; *Boze*, 912 F.2d at 805.

2.      **Shipp Cannot Satisfy the 5ᵗʰ Circuit's Demanding Standard.**

A majority of the Fifth Circuit's seven constructive discharge factors are utterly inapplicable to Shipp's case.  For example, Shipp does not and cannot claim that Matthews demoted her, reduced her salary,[6] offered her an early retirement,[7] reduced her work responsibilities,[8] or reassigned her to menial or degrading work. Shipp also cannot claim that she was reassigned to a younger supervisor in 2016, as Matthews is in fact the same age as Shipp, and two years older than Broam. *See* Ex. 4, Zimmerman Decl. 12, ¶ 14; Ex. 2, Def.'s 2ⁿᵈ Supp. Rog. Resp. at No. 4. Thus, Shipp's **only avenue** to establish a viable constructive discharge claim is via the sixth factor.

Shipp's "harassment" allegations against Matthews consist of him allegedly: (1) yelling at her; (2) slamming his hand on his desk or a cubicle wall on two to three occasions; (3) talking down to her; (4) not providing her training as to his weekly spreadsheet or deriding her for not completing it timely or adequately; (5) making a comment about her weight on one occasion;(6) appearing annoyed at her when she reported an injury after falling on the stairs; (7) posting an comment on another person's offensive personal Facebook posting back in September 2015 before he became her supervisor; and (8) transferring sales accounts or opportunities to a younger, male coworker.  None of this conduct, however, rises to the level of "badgering, humiliation, or

---

[6] Shipp in fact received a significant base pay increase in 2015 and a merit increase in 2016. *See* Ex. 1, Pl. Dep. at 144:11-16; *see also* Ex. 3, Job History Report (reflecting an increase in her base salary by over $15,500 between January 2015 and her June 2016 resignation and an increase of over $3,000 during the specific five month period she reported to Matthews).

[7] Shipp admitted in her deposition that Matthews never suggested she retire. Ex. 1, Pl. Dep. at 145:11-23.

[8] Shipp remained a Major Account Executive until her resignation and encountered no change in her essential job responsibilities before then either. *See* Ex. 1, Pl. Dep. at 144:17-145:3; Ex. 3, Job History Report; Ex. 4, Zimmerman Decl. at 12, ¶ 13.

harassment" that amounts to a hostile work environment,[9] let alone a constructive discharge. In fact, it is much more akin to the type of conduct courts have routinely found insufficient as a matter of law. *See, e.g., Brown (2015)*, 616 F. App'x at 657 (no constructive discharge even though supervisor criticized plaintiff's sales performance and threatened to take away support staff); *Stover v. Hattiesburg Public Sch. Dist.*, 549 F.3d 985, 991-992 (5th Cir. 2008) (no constructive discharge even where plaintiff was not provided same career development opportunities as a co-worker, claimed her complaints of discrimination were not investigated, was not granted comp time while others were, and had her supervisor exhibit anger, violence, shouting, and waving his arms at her); *Haley*, 391 F.3d at 650 (no constructive discharge even though plaintiff accused employer of "fabricating deficiencies in [her] work performance and setting an overly strict performance plan for her; threatening to fire her if she did not meet her teamwork goals; micromanaging her; excluding her from HR Department meetings; and ridiculing her in front of

---

[9] Notably, Shipp's Complaint does not specifically assert a hostile work environment claim, and she should be precluded from attempting to do so at this late stage. *See Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) ("[A] district court considering a defendant's motion for summary judgment does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard."). Nevertheless, even if permitted, the harassing conduct about which Shipp complains is not severe or pervasive, was not based on any protected characteristic, and did not affect a term, condition, or privilege of Shipp's employment, thereby entitling Charter to summary judgment on such a claim. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651-52, 654-55 (5th Cir. 2012) (articulating basic elements of harassment claim and affirming summary judgment in employer's favor). Moreover, none of the conduct led to a tangible employment action, which means Charter is entitled to assert an affirmative defense. *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 164 (5th Cir. 2007) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) ("So long as the supervisor's actions did not result in a 'tangible employment action' against the employee . . . , employers may assert the Ellerth/Faragher defense . . . ."). In that regard, Charter is not liable to Shipp, as she did not exhaust all complaint avenues available to her and cannot demonstrate that the action Charter took to address the complaints she did make did not stop the alleged harassing behavior. *See id.* at 165 (explaining plaintiff's obligation to file multiple complaints of harassment if employer provides multiple means of doing so); *see also Williams-Boldware v. Denton Cty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014) ("[I]n determining whether the employer's actions were remedial, [the Fifth Circuit] has considered whether the offending behavior in fact ceased.").

her coworkers"); *Parra*, 2016 WL 2595114, at *5 (no constructive discharge despite supervisor using foul language and making a racial slur); *Hammond v. Katy Ind. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App.—Houston [14th Dist.] 1991, no writ) (finding no constructive discharge although principal "chewed out" plaintiff, raised his voice at her in front of others, and subjected her to other general harassment).

Notably, Shipp did not receive any work-related discipline from Matthews.[10] Ex. 1, Pl. Dep. at 145:4-10. She likewise admitted in her deposition that no Charter employee, including Matthews, ever asked her to quit[11] or told her she would be fired. *Id.* at 145:11-23, 150:5-12 & 292:2-293:7. Shipp's resignation emails likewise notified Charter that she was resigning to accept a position with a competitor who had offered her a job position that was a "step up in title" and carried a higher base salary. *See* Ex. 6, Resignation Ltrs.; Ex. 7, Danny Shipp Dep. at 89:17-90:4; *see also* Ex. 8, Comcast Records at 3 & 6 (reflecting her base salary as $91,000 with an annual target compensation of $156,000 and representing that she left Charter for "other opportunities").

Shipp further resigned without exhausting all complaint avenues available. Although Shipp claims she spoke to Human Resources Director Lawrence about some of her concerns regarding Matthews, she admittedly never reached out to or submitted a complaint to Charter's Employee Relations Department or nor did she complain to Lawrence's supervisor, Director Zimmerman, about Lawrence not sufficiently addressing her concerns. Ex. 1, Pl. Dep. at 101:13-17*,* 253:2-23, & 255:1-14.; *see also* Ex. 20, EEO Policy (providing various contact methods for raising complaints to the Employee Relations Department); Ex. 4, Zimmerman Decl. at 10 ¶ 10(d)

---

[10] The last discipline Shipp received was in 2011. *See* Ex. 5, 2011 Corr. Action.

[11] Shipp only alleges that, on one occasion in January 2016—prior to her FMLA leave and five months prior to her resignation—that Matthews offered to "find [her] a better fit" within the company. Ex. 1, Pl. Dep. at 177:21-178:23. He did not, however, insinuate that she needed to leave the company altogether. *Id.* at 145:11-23, 150:5-12, & 292:2-293:7.

(explaining how employees can view and access the EEO Policy and noting Shipp's absence of any complaint). Shipp also failed to utilize Charter's internal processes to appeal any specific sales account or opportunity she claims was wrongly transferred away from her and even despite being specifically advised to do so in March 2016 by Lawrence. *See* Ex. 9, Mar.15-16, 2016 Emails; Ex. 11, Rules of Engagement at § 9.0; Ex. 9, March 15-16, 2016 Emails; Ex. 4, Zimmerman Decl. at 10 ¶ 10(c). In this regard, Shipp cannot possibly claim she faced intolerable working conditions that would have caused a reasonable person in her shoes to resign; instead, even accepting her allegations as true, she merely assumed the worst and decided, on her own, to begin a better employment opportunity with a competitor to Charter.

In short, for a multitude of reasons, Shipp cannot demonstrate she suffered an adverse employment action at the hands of Charter as a matter of law. She consequently cannot maintain any of her legal claims asserted under Title VII, the ADEA, the FMLA, or Chapter 21 of the Texas Labor Code. This Court accordingly should grant Charter's Motion on this basis and dismiss Shipp's lawsuit with prejudice in its entirety.

**E.      *Shipp, Alternatively, Cannot Establish a* Prima Facie *Case of Age or Gender Discrimination.***

Assuming Shipp could somehow satisfy the high burden required to demonstrate a constructive discharge, she still retains the burden to prove the other elements of her *prima facie* case. To establish a full *prima facie* of either age or gender discrimination, Shipp must present competent evidence that she was either (i) replaced by someone outside of her protected class or significantly younger, (ii) was treated differently than similarly situated employees outside of her protected class, or (iii) was otherwise discriminated against because of her age or gender. *See Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 234 (5th Cir. 2015); *Gill v. DIRTT Envt'l Solutions, Inc.*, No. 5:17-CV-3-DAE, 2018 WL 9439764, *3 (W.D. Tex. Sept. 28, 2018); *Sexton*

*v. Aaron's Inc.*, No. 1:15-CV-093-RP, 2016 WL 164639 at *5 (W.D. Tex. Jan. 13, 2016). Shipp, however, cannot proffer competent evidence that satisfies this causation element.

      **1.**      **Shipp Was Replaced By a Female Only Two Years Younger Than Her.**

After Shipp resigned in June 2016, Matthews filled her open Major Account Executive position with an internal candidate, Tina Ahrens. Ex. 2, Def.'s 2nd Supp. Rog. Resp. at No. 4. Ahrens is a female, over the age of 40, and only two years younger than Shipp. *Id.; see also* Ex. 1, Pl. Dep. at 290:22-291:6 (admitting she and Ahrens are approximately the same age and that Ahrens joined Matthews' team after her resignation). Based on these indisputable demographics, Shipp cannot demonstrate she was replaced by someone **<u>outside</u>** her protected class.

      **2.**      **Shipp Cannot Draw Comparison to Two Female Employees Over the Age of 40, Even if Not Based on Hearsay or Speculation.**

Shipp similarly cannot demonstrate that Charter gave preferential treatment to "similarly situated" employees outside of her protected class under nearly identical circumstances. *See Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 213-14 (5th Cir. 2018).  To establish disparate treatment, Shipp and any claimed comparators must be "similarly situated" in all respects, including having "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* at 213 (citation omitted). Try as she may, Shipp cannot satisfy this standard.

Shipp generically claims two other females on Mattthews' sales team, Tammy Carosello and Patty Chapman, received preferential treatment,[12] although does not cite—and cannot cite—their gender as a reason for any alleged preferential treatment. With regard to Carosello, Shipp attributes any claimed preferential treatment to Matthews allegedly spending "weekends on the

---

[12] Interestingly, Shipp did not point to Hector Castano when asked in her deposition why she believed Matthews discriminated against her because of her age or gender.  Ex. 1, Pl. Dep. at Ex. 1, Pl. Dep. at 229:20- 231;10 & 235:17-236:14.

lake with she [sic] and her husband, outside activities." Ex. 1, Pl. Dep. at 229:24-230:6. However, even if true, both Shipp and Carosello are female and over the age of 40. *Id.* at 250:1-7; Ex. 2, Def.'s 2nd Supp. Rog. Resp. at No. 4. Thus, with both falling the same protected class, any comparison Shipp may attempt to draw cannot satisfy the "similarly situated" standard.

As for Chapman, Shipp claims she received preferential treatment from Matthews because, according to Shipp, she was "young," "pretty," and "one of the boy's." Ex. 1, Pl. Dep. at 250:8-252:23. At the same time though, Shipp admitted in her deposition that Chapman was new (which would explain why Matthews may have provided her sales leads over Shipp), that Shipp's knowledge of Chapman obtaining any sales leads is based purely on hearsay, and that Shipp had purely speculative knowledge as to how Matthews treated Chapman when it came to his weekly forecasting spreadsheet. *Id.* Nevertheless, just as with Carosello, even if Shipp's speculative and hearsay knowledge is considered, it is of no moment since Chapman is female and over the age of 40 as is Shipp. Ex. 2, Def.'s 2nd Supp. Rog. Resp. at No. 4.

Beyond this, Shipp cannot cite any other competent evidence as to why she believes Matthews treated her differently because of her age or gender. Shipp instead merely points to her claim that she never felt they "were a team," that Matthews allegedly "talking down to her," and her speculative belief that she "didn't fit in with his type of people." Ex. 1, Pl. Dep. at 229:20-231;10 & 235:17-236:14. Needless to say, Shipp's attempt to demonstrate disparate treatment fails as a matter of law. *See, e.g., Bauer v. Albemarle Corp.*, 169 F. 3d 962, 968 (5th Cir. 1999) (Title VII gender discrimination plaintiff failed to make case of disparate treatment in referencing treatment in comparison to other women); *Card v. Fred's Stores of Tenn., Inc.*, Civil Action No. 1:10CV1-B-D, 2011 WL 2692915, at *6 (N.D. Miss. July 11, 2011) (plaintiff's coworker was in same protected age class and thus not proper comparator); *Castaneda v. Univ. of Tex. at San*

13

*Antonio*, No. CIVASA01CA0590OG(NN), 2003 WL 1797954, at \*10 (W.D. Tex. Mar. 3, 2003) (finding insufficient evidence of disparate treatment where plaintiff had no personal knowledge of how co-workers were treated and instead relied upon inadmissible hearsay).

> ### 3.   Shipp Can Provide No Competent Evidence Demonstrating She Was Otherwise Discriminated Against Because of Her Age or Gender.

Shipp lastly is unable to demonstrate that she was otherwise discriminated against because of her age or gender. Indeed, during her deposition, she was unable to identify any negative or derogatory comments that Matthews ever made regarding her age—or anyone else's age for that matter. Ex. 1, Pl. Dep. at 230:23-231:10. Thus, other than her own general, unsupported, and speculative belief, Shipp can present no evidence from which the Court can infer she was ever discriminated against based on her age.

The same is true with regard to her claim of gender discrimination. The only derogatory comment that Shipp alleges Matthews ever made to her with regard to her being female is, on its face, not related to gender at all, but rather her weight, which is gender-neutral. Ex. 1, Pl. Dep. 237:2-238:7 & 239:18-23; *see McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 457-58 (5th Cir. 2019) (holding that to be direct evidence of discrimination, the comment must be more than a "stray remark," and in a circumstantial case, it must reference the plaintiff's protected class in a "derogatory or stereotypical way"). Although Shipp additionally alleges that a Facebook post upon which Matthews commented—from his personal Facebook page— demonstrates discriminatory animus toward women in general, it cannot carry her *prima facie* burden, as it had nothing to do with Shipp, Charter, or their employment relationship at all. Ex. 1, Pl. Dep. at 299:5-300:5. Moreover, Matthews' comment occurred in 2015, months before Shipp joined Matthews' team, qualifying it as a stray remark as well. *See Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 187 (5th Cir. 2018) (finding comments remote in time insufficient

to establish discrimination); *Pathria v. Serwer*, 599 F. App'x 176, 177 (5th Cir. 2015) (stray remarks that are isolated, remote in time, and unconnected to event leading to plaintiff's dismissal cannot be competent evidence of discrimination).

**F.**     ***Shipp, in the Further Alternative, Cannot Satisfy her Ultimate Burden of Persuasion.***

Assuming Shipp can meet her *prima facie* burden on any of her claims, she must show that age discrimination, gender discrimination, or FMLA retaliation was a motivating factor behind or a "but-for" cause of any alleged adverse employment action she suffered. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009); TEX. LAB. CODE § 21.125(a). The only possible actions Shipp can cite—beyond her resignation from employment already addressed in the constructive discharge context above—concerns supposed sales accounts and opportunities she claims were transferred away from her to other employees, specifically Hector Castano, a younger, male employee. Shipp, however, cannot demonstrate she was adversely affected by any accounts or opportunities allegedly transferred to Castano before she resigned her employment, or better yet, that any accounts or opportunities would transferred because of her age, gender, or use of two weeks of FMLA leave in 2016.

**1.     Record Evidence Demonstrates that Legitimate Reasons Existed for Transferring Sales Accounts or Opportunities.**

The Sales Rules of Engagement in place in the first half of 2016 granted management the "authority and right to re-assign Accounts and/or Opportunities of any type among Sales Reps as deemed appropriate in order for the company to optimize sales performance and meet its business goals as long as reassignments do not materially compromise the defined sales territory strategy." Ex. 11, Rules of Engagement at § 2.8. After she returned from leave, Shipp claims Matthews told her he had to rearrange some accounts so that customers would be taken care of." Ex. 1, Pl. Dep. at 109:15-22; *see also* Ex. 12, Matthews Dep. 46:10-47:25 (testifying that managers have

discretion to move accounts because employees do not "own" the accounts, and that he moved accounts only when necessary "based upon customer need, customer dissatisfaction"). However, as it turned out, only one account was moved from Shipp during her brief FMLA leave, and it was returned immediately upon her return. *See* Ex. 10, Lawrence Dep. 36:21-37:12 & 90:17-19 (confirming only one account or opportunity was moved during Shipp's FMLA leave, and it was from Shipp to Broam).[13] Regardless, taking care of a customer is a legitimate, non-discriminatory reason to transfer a sales account or opportunity temporarily that has nothing to do with any employee's age, gender, or use of FMLA leave.

With regard to any sales accounts or opportunities allegedly moved after Shipp returned from her two-week FMLA leave, it is important to note that, around this same time, period Castano moved from an Account Manager to a Major Account Executive. Matthews thus had an obligation to "ramp him up" and provide him sales accounts and opportunities. Ex. 10, Lawrence Dep. at 75:24-77:5. Nevertheless, Shipp herself admittedly received accounts from Matthews just like Castano. *See* Ex. 1, Pl. Dep. at 224:14-225:19 ("[Matthews] called me in and talked to me about a customer that was an existing client, was not a new client.  It was dumped on me, to be quite frank. … Chris asked me to handle it."); Ex. 9, Mar.15-16, 2016 Email (indicating Matthews fought for Shipp to receive quota for one-time South by Southwest (SXSW) event). Moreover, according to Shipp's friend and co-worker, although "[t]here were lots of accounts going back and forth," Shipp still "had the biggest base of accounts" when she resigned.[14] Ex. 13, Broam Dep. at 172:24-173:25

---

[13] Shipp's friend and co-worker, Debbie Broam, testified that, when Shipp was on FMLA leave, "some" of Shipp's accounts were transferred to her, but they were transferred back to Shipp upon her return. Ex. 13, Broam Dep. at 151:7-15 & 152:9-153:23.

[14] Broam testified that one sales opportunity relating to a Comfort Suites in Kyle, Texas went to her during Shipp's FMLA leave, not Castano. Ex. 13, Broam Dep. at 154:155:15. Notably, Broam is the same age as Shipp, is female, and also took FMLA leave in 2016.

& 178:11-12. Notably, the Sales Operations Department[15] reviewed Shipp's sales module in the spring of 2016 and determined Shipp had enough accounts to be successful. Ex. 10, Lawrence Dep. at 76:10-77:17. In this regard, Shipp cannot demonstrate that she was adversely affected by any supposed sales accounts or opportunities transferred away from her 2016.

> **2.    The Allegedly Transferred Sales Accounts or Opportunities Shipp Identifies Either Were Not Transferred or Did Not Result in Economic Harm.**

During discovery, Shipp identified five specific sales accounts or opportunities that she claims were moved to Castano during her FMLA leave:[16] (1) Hyatt Place at the Austin Airport (Journeyman Construction), (2) Hyatt House, downtown Austin (Journeyman Construction), (3) Hotel Indigo, (4) Hilton Garden Inn, and (5) Holiday Inn. *See* Ex. 1, Pl. Dep. at 110:6-23 & 118:23-119:6; Dkt. 1, Pl.'s Compl. at 5 ¶ 27; Ex. 14, Pl.'s Interrog. Resp. No. 18. Shipp also identified two Marriott accounts associated with Mohammed Minhaus that she claims were removed from her and given to Castano after she returned from FMLA leave.[17] Ex. 1, Pl. Dep. at 114:7-21. Shipp, however, has no competent evidence supporting her bald, conclusory, and speculative allegations regarding these seven identified accounts.

To the contrary, the record evidence demonstrates that most of these sales accounts or opportunities that Shipp vaguely identifies[18] were never transferred to Castano at all, or if they

---

[15] The Sales Operations Department, not Matthews is "responsible to ensure that there are enough accounts in every employees' module to be successful. And if there's not, then they have an obligation to assign more accounts to them." Ex. 10, Lawrence Dep. at 76:20-77:5.

[16] For his part, Castano does not recall any accounts opportunities being transferred to him while Shipp was on FMLA leave. Ex. 15, Castano Dep. at 46:23-48:6.

[17] Shipp alleges another account or opportunity, the exact name of which she cannot remember but was associated with Raj Patel, was given to Castano. Ex. 1, Pl. Dep. at 115:6-116:12. Despite efforts to more specifically identify this account, Charter was unable to uncover any evidence demonstrating that such an account was transferred from Shipp to Castano before her June 7, 2016 resignation. Ex. 16, Chart of Allegedly Transferred Sales Accounts.

[18] Shipp's allegations regarding each sales account or opportunity has been less than clear. *See* Ex. 14, Pl.'s Interrog. Answer No. 18; Ex. 16, Chart of Allegedly Transferred Sales Accounts. As an example, in her deposition, Shipp confused the Hyatt Place and Hyatt House accounts, and

were, it was not until Shipp resigned her employment. *See* Ex. 16, Chart of Sales Accounts Allegedly Transferred; *see also* Ex. 15, Castano Dep. at 43:12-44-20, 45:9-46:10 (testifying he received Hyatt Austin airport account after Shipp's resignation, but he received no commissions on this account because Shipp finished sale and contract before she left). Indeed, there was only single instance in which a sales account or opportunity was transferred to Castano prior to Shipp's resignation, but critically it never resulted in a sale or commission.[19] *See* Ex. 16, Chart of Sales Accounts Allegedly Transferred; Ex. 2, Def.'s 2nd Supp. Rog. Resp. at No. 2. Consequently, the transfer of that account does not qualify as an adverse employment action as a matter of law. *See EEOC v. Omni Hotels Mgmt. Corp.*, 516 F. Supp. 2d 678, 698 (N.D. Tex. 2007) (finding no adverse employment action where change in sales responsibility did not affect plaintiff's pay, benefits, or other terms or conditions of employment); *Wayne v. Dallas Morning News*, 78 F. Supp. 2d 571, 584 (N.D. Tex. 1999) (concluding account assignments cannot constitute ultimate employment decisions unless non-conclusory evidence shows reassigned accounts had actual economic impact on plaintiff); *see also Gonzalez v. Sw. Bell Yellow Pages, Inc.*, Civil Action No. 3:-5-CV-383-L, 2007 WL 900768, at * 8 (N.D. Tex. Mar. 26, 2007) (granting summary judgment

---

when pressed, she could only respond, "Well, I don't think that ever played—to be honest, I don't think that that ever played out.  I'm not sure if that's –like I said, I had four hotels that were opening and billing right around the same time and they were all in the downtown area.  So I—I'm really going to have to go back and maybe look at my check stubs.  I'm going to have to look." Ex. 1, Pl. Dep. at 121:3-23. Importantly, Shipp never produced any such check stubs or any other documents clarifying the accounts at issue, nor did she supplement her interrogatory answer before the close of discovery.

[19] Castano received a small amount of commission on one sales account or opportunity identified before Shipp's resignation. Ex. 16, Chart of Sales Accounts Allegedly Transferred. That opportunity related, however, to a one-time event and was **never an account assigned to Shipp**. To the contrary, based on Shipp's own admission, it was an opportunity discovered by Matthews and provided to Castano in the "ramp up" time following his move to a Major Account Executive position. *See* Ex. 9, Mar. 15-16 Emails (admitting in original email that Matthews uncovered the Safari Telecom opportunity not her, that Castano was "at ramp," while she was at full quota, and that Matthews had fought for another one-time event for Shipp).

on plaintiff's age and gender discrimination claims because plaintiff could not provide evidence that alleged comparators received commission on accounts reassigned to them instead of plaintiff). Likewise, Castano's receipt of commissions on any sales accounts or opportunities transferred to him **upon** Shipp's resignation likewise does not equate to an adverse employment action taken against Shipp **before** her resignation.[20] All in all, Shipp cannot fulfill her burden of specifically identifying any sales account or opportunity that was transferred away from her between January 22, 2016, the day she began reporting to Matthews, and her resignation on June 7, 2016, and for which Castano received a commission instead of her.

### 3. Shipp Cannot Proffer Any Competent Evidence Tying Her Age, Gender, or FMLA Use to Any Allegedly Transferred Sales Accounts or Opportunities.

Regardless, Shipp's claim that sales opportunities or accounts were transferred away from her due to her gender, age, or FMLA retaliation is supported by nothing more than her own pure speculation, which the Fifth Circuit has long held insufficient to defeat summary judgment. *See Rogers v. Bromac Title Svs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (rejecting use of "conclusional allegations [and] unsupported assertions"). The question before the Court is not whether Charter made correct or prudent business decisions with respect to any alleged transferred sales opportunity or account, but rather "whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995); *see Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997) ("We do not view the discrimination laws as

---

[20] Castano's receipt of commissions after Shipp's resignation also should not have been a surprise, since Shipp herself acknowledged in an email months before she resigned that at least two of the hotels at issue would not be built until December 2016, which was six month after she resigned. *See* Ex. 17, Mar. 3, 2016 Email to Johanknecht. Notably, this same email reflects Shipp's continued work on the account after her FMLA leave and before her resignation, which further negates any inference of retaliation.  *See also* Ex. 32, 2016 Shipp Emails re: Hotel Indigo & Holiday Inn; Ex. 33, 2016 Shipp Emails re: Journeyman/Hyatt ABIA (evidencing Shipp continuing to work on these accounts after her FMLA leave and before her resignation).

vehicles for judicial second-guessing of business decisions."). This is exactly where Shipp's contentions and evidence fails, even assuming she could proceed past her *prima facie* case to her ultimate pretext or "but for" burden. *Cf. Dittmer v. Texas S. Univ*., CIV.A. 10-182, 2011 WL 2162222, at *15 (S.D. Tex. June 2, 2011) ("As the Fifth Circuit has so aptly noted, 'discrimination suits still require evidence of discrimination.'" (citation omitted)).

Simply stated, Shipp cannot put forth any competent summary judgment evidence that: (a) identifies a specific sales opportunity or account transferred to Castano between January 22, 2016 and June 7, 2016; (b) that led to Castano receiving commissions instead of Shipp after the transfer; and (c) for which the reason Charter proffered was pretext for age discrimination, gender discrimination, or FMLA retaliation—versus being solely based on a legitimate, non-discriminatory reason. Without such evidence, this Court has yet another basis upon which it can dismiss Shipp's lawsuit with prejudice. Thus, for this reason as well, this Court should grant Charter's Motion for Summary Judgment in its entirety.

## IV.   CONCLUSION & PRAYER

As is evident, Shipp cannot sustain her claims of gender discrimination, age discrimination, and FMLA retaliation as a matter of law. Not only are her claims under the FMLA and Chapter 21 barred by limitations, but she also never suffered any adverse employment action. Contrary to her claims, she was not faced with such intolerable working conditions such that she was forced to resign, nor can she demonstrate that any action Matthews took against her pertained to her gender, age, or use of two weeks of FMLA leave. Shipp thus cannot satisfy her *prima facie* or ultimate pretext burden. For these reasons, Charter prays that this Court grants its Motion for Summary Judgment and dismisses Shipp's lawsuit with prejudice in its entirety. Charter also prays that it be awarded any taxable costs it incurred in defending against this lawsuit and any other relief to which

it may be justly entitled.

Respectfully submitted,

*/s/ Christine E. Reinhard*
Christine E. Reinhard
State Bar No. 24013389
Shannon B. Schmoyer
State Bar No. 17780250
Delilah Lorenz Evans
State Bar No. 24036991
SCHMOYER REINHARD LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
Phone:  (210) 447-8033
Fax:  (210) 447-8036
creinhard@sr-llp.com
sschmoyer@sr-llp.com
devans@sr-llp.com

**ATTORNEYS FOR DEFENDANT
CHARTER COMMUNICATIONS, INC.**